UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
VANCE KINGSBURY,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 11-0884 (RBW)
                                    )
ISAAC FULWOOD, JR., *et al.*,       )
                                    )
            Defendants.             )
_____ )

**MEMORANDUM OPINION**

This matter is before the Court on the defendants' motion to dismiss. For the reasons discussed below, the motion will be granted.

I.  BACKGROUND[1]

*A. The Plaintiff's Criminal Convictions*

On December 15, 1975, while on probation for a 1974 burglary conviction, the plaintiff murdered the manager of a Peoples Drug Store in the course of a robbery.[2] Complaint ("Compl."), Exhibit ("Ex.") 1 (D.C. Adult Initial Hearing Summary dated July 17, 2001) at 1 (exhibit numbers were not provided and have been designated by the Court). The plaintiff was convicted of felony murder in the rearrest case, and on September 27, 1977, the Superior Court

---

[1] The plaintiff submitted his complaint on a five-page preprinted form to which he attached a 23-page typewritten statement and exhibits. Unless specified otherwise, references to the complaint are references to the typewritten statement, and the page numbers are those designated by the Court's ECF system.

[2] "The [plaintiff's] first offense . . . is a burglary in August 1974," for which he "was originally placed on probation for 3 years but probation was revoked in 1976 for administrative violations and the two new crimes." Compl., Ex. 1 at 1.

1

of the District of Columbia ("Superior Court") imposed a sentence of 20 years to life imprisonment in that case. Compl. at 9. He became eligible for parole on February 1, 2000. *Id.*

*B. Parole Regulations and Guidelines*

1. Indeterminate Sentencing

Generally, a Superior Court offender sentenced "for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, . . . may be released on parole . . . at any time after having served the minimum sentence." D.C. Code § 24-403(a) (2001) (emphasis added). An offender was sentenced to a range, such as 20 years to life imprisonment, and his parole eligibility was "established by the sentencing court." *Cosgrove v. Thornburgh*, 703 F. Supp. 995, 997 (D.D.C. 1988). Under District of Columbia law, parole may be granted when it appears that "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his . . . release is not incompatible with the welfare of society, and that he . . . has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be." D.C. Code § 24-404(a) (2001).

2. The Parole Board's 1987 Regulations and 1991 Policy Guideline

When the plaintiff committed his crimes, the District of Columbia Board of Parole ("Parole Board") made all parole-related decisions for District of Columbia Code offenders. *See Austin v. Reilly*, 606 F. Supp. 2d 4, 8 (D.D.C. 2009). Initially there was "no formalized scoring system" in place, and the Parole Board only "was required by regulation to consider factors such as the inmate's offense, prior history of criminality, personal and social history, . . . [and] institutional experience, . . . when exercising its discretion to authorize parole." *Davis v. Henderson*, 652 A.2d 634, 635 (D.C. 1995). In short, "parole eligibility was determined by a . . .

Board that operated with nearly complete discretion." *Wilson v. Fulwood*, 772 F. Supp. 2d 246, 252 (D.D.C. 2011) (citing *Austin*, 606 F. Supp. at 8).

The Parole Board subsequently developed and published regulations, *see* D.C. Mun. Regs. tit. 28, § 100 *et seq.* (1987) (repealed Aug. 5, 2000) ("1987 Regulations"), in an effort to "mak[e] explicit those factors that [would] be considered in each [individual] case." *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 69 (D.D.C. 2008) (citations omitted and emphasis removed). In December 1991, it issued a policy guideline ("1991 Policy Guideline") to define certain terms used in the appendices to the 1987 Regulations. *Id.* at 71.

### 3. The USPC's 2000 Guidelines

Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. No. 105-33, 111 Stat. 712 (1997), the Parole Board was abolished, *see* D.C. Code § 24-131(b) (2001), and the United States Parole Commission ("USPC") was authorized to grant, deny, impose or modify conditions of, and revoke parole for District of Columbia Code felony offenders, as well as to promulgate and apply its own regulations for implementing the District of Columbia's parole laws. *See* D.C. Code § 24-131(a) (2001). "Between 1998 and 2000, the USPC drafted new parole regulations and guidelines ('the 2000 Guidelines') that it applied to any offender who received an initial parole hearing after August 5, 1998." *Sellmon*, 551 F. Supp. 2d at 72.

The 2000 Guidelines first call for the calculation of an offender's salient factor score ("SFS"), *see* 28 C.F.R. § 2.80(c), and the offender's SFS places him in one of four risk categories, *see id.* § 2.80(f). Points are assigned to each risk category, from 0 (very good risk) to 3 (poor risk). *Id.* Next, the offender's "[t]ype of [r]isk" is determined based on the offender's history of violence, use of weapons, and death of a victim. *Id.* Points for the type of risk are

3

added to the offender's SFS to determine the "base point score," which in turn correlates to a "base guideline range" in months. *Id.* § 2.80(h).

"[B]oth the 1987 Regulations and the 2000 Guidelines allow the USPC to deny parole to a presumptively suitable prisoner if there are 'unusual circumstances.'" *Cole v. Fulwood*, __ F. Supp. 2d __, __, 2012 WL 3024760, at *1 (D.D.C. July 25, 2012) (quoting *Sellmon*, 551 F. Supp. 2d at 73). The following summary of major differences in the two sets of guidelines is relevant to this case:

> [T]he 2000 Guidelines allow departure from the decision reached based on the SFS [salient factor score] "on any basis ... [not] 'fully taken into account in the guidelines.'" [*Sellmon*, 551 F. Supp. 2d at 73] (quoting 28 C.F.R § 2.80(n)). Additionally, under the 2000 Guidelines, the USPC is encouraged to consider "offense accountability" when making parole decisions. *Id.* at 88. Unlike the 2000 Guidelines, "the 1987 Regulations presume that the minimum sentence imposed by the sentencing court appropriately accounts for a parole candidate's offense severity and accountability and that the parole decision should be limited to consideration of the offender's risk of recidivism and institutional conduct." *Id.* The 1987 Regulations required any departure from the presumption to be justified by reference to one or more of an enumerated list of possible reasons, which were intended to identify prisoners who were a greater risk for parole than indicated by their SFS. *Id.* at 71. The permissible factors justifying the denial of parole to a presumptively eligible prisoner, under the 1987 Regulations, are listed in Appendices 2–1 and 2–2. D.C. Mun. Regs., tit. 28, § 204.1; *id.* apps. 2–1 & 2–2. Appendix 2–1 lists: (1) "repeated failure under parole supervision;" (2) "ongoing criminal behavior;" (3) "a lengthy history of criminally related alcohol abuse;" (4) "a history of repetitive sophisticated criminal behavior;" (5) "an unusually extensive and serious prior record;" or (6) "unusual cruelty to victims." *Id.* app. 2–1. Appendix 2–2 is entitled "Rehearing Guidelines—Point Assessment Grid and Findings Worksheet for Rehearings." *Id.* app. 2–2.  It lists three factors which can justify a departure from the guidelines: (1) "change in the availability of community resources leading to a better parole prognosis;" (2) "poor medical prognosis;" or (3) "other change in circumstances." *Id.*

*Cole*, 2012 WL 3024760, at *1.

### *C. The Plaintiff's Parole Hearings*

The plaintiff's initial parole hearing took place on November 30, 2000. Compl., Ex. 1 at 1. Although the hearing examiner recommended that parole be denied, it later "was decided that another hearing should be conducted in order to discuss with the [plaintiff] the details discovered" on review of "the evaluation section of the [presentence investigation report] and the Murder/Robbery case," as well as "information about the assault with a Deadly Weapon, Robbery, Obstruction of Justice and even the earlier burglary case." *Id*. The assault with a deadly weapon and obstruction of justice offenses apparently arose from the plaintiff's "attempt[] to kill a female who testified against him in the 1974 burglary case." *Id.* at 2. The plaintiff injured the female and the small children and teenager who were present "when [the plaintiff] fired a shotgun at them." *Id*. All four victims sustained injuries, although there was "no indication about the seriousness of the injuries." *Id.*

Hearing examiner Rob Haworth ("Haworth") conducted a second hearing on July 17, 2001, and recommended that parole be denied:

> This prisoner claims to be innocent of the murder and the robbery at the Peoples Drug Store, 12/15/75. He admits being involved in a shooting but states it was only to scare the victim. The [presentence investigation report] indicates otherwise and shows that several people including children were injured from the shotgun blast. Subject admits he committed a residential burglary.
>
> Parole eligibility came after 24 years, 2/1/2000. Subject did not have his first Initial Hearing until November or [sic] 2000 and is now having this new hearing in July 2001. Any set off given at this time should be from the parole eligibility date . . . .
>
> Subject has been in custody 25 ½ years, 306 months as of 7/21/2001. Based on the extremely serious crimes he committed, it is recommended that he not be seriously considered for release

> until he serve [sic] 35-40 years. This examiner is recommending that parole be denied and that subject be set off for 5 years.

*Id.*, Ex. 1 at 3. Haworth declined to apply the USPC's 2000 Guidelines because the plaintiff's initial hearing took place before the 2000 Guidelines took effect. *Id.*

The plaintiff's parole reconsideration hearing took place on November 17, 2004. Compl. at 10. Applying the 2000 Guidelines, hearing examiner Joseph M. Pacholski ("Pacholski") determined that "[a] decision above the guidelines [was] warranted," given that the plaintiff had "injured [a] female and two children and a teenager with a shotgun blast," and "also [committed] murder." *Id.*, Ex. 2 (Hearing Summary dated November 17, 2004) at 2. Pacholski "struggled with the idea of giving the [plaintiff] a parole date at the top of the guideline range," but found instead that the plaintiff was "a more serious risk" than his scores indicated. *Id.*

Haworth conducted the plaintiff's next reconsideration hearing on September 11, 2007. Compl. at 10. He opined that "[t]he granting of parole for someone like [the plaintiff was] difficult," given the "extremely serious crimes" the plaintiff committed. *Id.*, Ex. 3 (Hearing Summary dated September 11, 2007) at 2. Haworth was "of the opinion that [the plaintiff] should serve 40 years before being released," and recommended an upward departure from the 2000 Guidelines and further reconsideration in September 2010. *Id.* The USPC adopted the recommendation. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mem."), Ex. A (Notice of Action dated October 4, 2007) at 1.

The plaintiff's most recent reconsideration hearing took place on January 25, 2011. Compl. at 11. Hearing examiner Mark A. Tanner ("Tanner") "believe[d that the plaintiff needed] to serve a substantial amount of time before he should be recommended for parole based upon [the plaintiff] being a more serious risk." Defs.' Mem., Ex. C (Hearing Summary dated

6

January 25, 2011) at 2. Tanner recommended that parole be denied and offered the following explanation:

> A decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that your current offense behavior involved a Murder during an Armed Robbery and a separate crime during which you Attempted to Murder a Witness who was scheduled to testify against you in court. During the second assault, you injured a witness, two small children and a teenager with a shotgun blast you fired at the intended victim. You were already on probation for a burglary when you committed these offenses. The Commission finds that your criminal conduct in which you caused the death of one and attempted to kill others while on probation indicates that there is a reasonable probability that you will commit additional crimes if released and you remain a risk to the community.

*Id.*, Ex. C at 3. The USPC adopted Tanner's recommendation, denied parole, and continued the matter for a further reconsideration hearing in January 2014. Compl., Ex. 4 (Notice of Action dated March 1, 2011) at 1.

## II. DISCUSSION

The plaintiff brings this civil rights action under 42 U.S.C. § 1983, against Isaac Fulwood ("Fulwood"), Chair of the USPC, and hearing examiners Haworth, Pacholski, and Tanner in their official capacities.[3] Compl. at 4, 6-8.[4] The plaintiff demands a declaratory judgment and injunctive relief "in the form of a Reconsideration Hearing, conducted according to the laws/regulations at the time of Plaintiff's offense." *Id*. at 5. The defendants move to dismiss on

---

[3] Although the plaintiff purports to sue Fulwood, Haworth, Pacholski and Tanner in their individual capacities, *see* Compl. at 7-8, the declaratory and injunctive relief he demands, *see id.* at 5, could only be provided by these defendants in their official capacities. The Court therefore construes the complaint as having been filed against these defendants in their official capacities only.

[4] Although the plaintiff names the Director of the Federal Bureau of Prisons and the Warden of the Allenwood Federal Correctional Institution as defendants to this action, *see* Compl. 7, the complaint neither alleges facts about them nor raises any claims against them.

the ground that the complaint fails to state claims upon which relief can be granted.[5] *See generally* Defs.' Mem. at 18-29.

### A. Dismissal Standard Under Rule 12(b)(6)

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion, the "complaint is construed liberally in the plaintiff['s] favor, and [the Court] grant[s] [a] plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the [C]ourt need not accept inferences drawn by [the] plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276. Nor must the Court accept "a legal conclusion couched as a factual allegation," nor "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (noting that the D.C. Circuit has "never accepted legal conclusions cast in the form of factual allegations" (internal quotation marks omitted)).

---

[5] To the extent that the plaintiff raises any claim arising from the 2001, 2004, or 2007 parole decisions, the claims will be dismissed as moot. *See Phillips v. Fulwood*, 616 F.3d 577, 581-82 (D.C. Cir. 2010). The plaintiff already has served additional time as those decisions required, and a favorable decision in this case would offer the plaintiff no additional relief.

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly,* 550 U.S. at 556).  "[A] complaint [alleging] facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).  Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson,* 551 U.S. at 94 (internal quotation marks and citation omitted), it too, "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct,'" *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79).

### B.  Ex Post Facto Clause Claim

According to the plaintiff, because he was convicted of crimes committed in the early 1970's, *see* Compl. at 9, he is "subject to D.C. Parole Guidelines in effect at the time of his offenses," not the USPC's 2000 Guidelines, *id.* at 22.  He argues that "application of the 2000 Guidelines automatically extended [the plaintiff's] minimum sentence by . . . 54-72 months . . . past his [parole] eligibility date . . . because he was convicted of a violent crime with one prior act of violence [and] one []which resulted in the death of a victim." *Id.* at 23.  Had he been considered for parole under the 1987 Regulations, he claims that he would have been deemed eligible for parole. *Id.* at 15.

The United States Constitution prohibits any State from passing an "ex post facto Law." U.S. CONST. art. 1, § 9, cl.3.  The clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 31, 43 (1990)).  "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept," *Garner v. Jones*, 529 U.S. 244, 250 (2000), if, for example, the law as applied to a particular prisoner's sentence "created a significant risk of increasing . . . punishment," *id.* at 255.  Here, the plaintiff claims that the USPC "is applying later-adopted laws that disadvantage him instead of the laws that were in effect at the time he committed the offenses." *Austin* 606 F. Supp. 2d at 9 (citing *Weaver v. Graham*, 450 U.S. 24, 30 (1981)).  Specifically, he argues that the retroactive application of the Commission's own guideline rather than either the 1987 Regulations or those in effect previously "creates 'a significant risk' of a 'longer period of incarceration than under the earlier rule.'" *Sellmon*, 551 F. Supp. 2d at 84 (quoting *Garner*, 529 U.S. at 255).  The claim is meritless.

Nothing in the record in this case suggests that the former Parole Board's 1987 Regulations apply to the plaintiff.  "[A] plaintiff may invoke an *ex post facto* protection only on the basis of the parole regime that was in effect at the time he committed his offense[s]." *Austin*, 606 F. Supp. 2d at 7-8 (citation omitted).  Plaintiff committed his offenses in or about 1972 (burglary) and 1975 (felony murder), years before the Parole Board promulgated its regulations.  Back then, "parole eligibility was determined by a D.C. Parole Board that operated with nearly complete discretion," *Wilson*, 772 F. Supp. 2d at 252 (citing *Austin,* 606 F. Supp. 2d at 8), subject only to regulations promulgated by the Parole Board in 1972, *see id.*; *see also Davis*, 652 A.2d at 634.  "[W]hen the reason for departing given under a new regime of parole guidelines

was also available under the old regime, there can be no *ex post facto* violation." *Cole*, 2012 WL 3024760, at *4; *Watson v. U.S. Parole Comm'n*, __ F. Supp. 2d __, __, 2012 WL 2428421, at *4 (D.D.C. June 26, 2012); *Daniel v. Fulwood*, 823 F. Supp. 2d 13, 20-21 (D.D.C. 2011).  As the *Sellmon* court noted, "the pre-1987 Regulations are thus of minimal help in demonstrating how the [Parole] Board exercised its discretion in practice prior to 1987." *Sellmon,* 551 F. Supp. 2d at 86 n.15.  Given the "totally unfettered" discretion under which the Parole Board operated in those days, *see Sellmon v. Reilly*, 561 F. Supp. 2d 46, 50 (D.D.C. 2008), the Court cannot conclude that plaintiff would have fared better under a prior regime.

### *C.  Due Process Clause Claim*

The plaintiff points to three matters which allegedly comprise violations of his right to due process.  None is meritorious.

### 1.  Hearing Examiner Bias Claim

First, the plaintiff argues that his right to due process was violated because the same hearing examiner, Rob Haworth, conducted reconsideration hearings both in 2001 and in 2007.  Compl. at 12-13.  He claims that "Haworth should have been recused . . . as he is biased, prejudicing [sic] and had pre-decided the case as is clear from his 2001 and 2007 decisions and stated opinion" of the plaintiff's unsuitability for release "until after he has served 34-40 years of incarceration." *Id.* at 13.  Although "there [is] no [r]egulation against an [e]xaminer conducting multiple [h]earings for the same subject," the plaintiff contends that the USPC's "adoption of . . . Haworth's arbitrary pre-made capricious decisions . . . went beyond the scope of [his] authority." *Id.* (emphasis removed).

As the defendants note, *see* Defs.' Mem. at 27, a hearing examiner may "conduct hearings and proceedings, take sworn testimony, obtain and make a record of pertinent information, . . . and recommend disposition of . . . matters," 18 U.S.C. § 4203(c)(2), such as the decision to grant or deny an application for parole, *id*. § 4203(b)(2). The USPC, not the hearing examiner, renders the final decision. *Id*. § 4203(b). Furthermore, any reliance on Haworth's recommendations is moot. Tanner, not Haworth, conducted the plaintiff's most recent parole reconsideration hearing, and the plaintiff's current custody is the result of the USPC's adoption of Tanner's recommendation.

2. Improper Exercise of Judicial Functions Claim

The plaintiff asserts that the USPC's apparent goal is the imposition of harsh penalties, *see, e.g.,* Compl. at 14, by ignoring an offender's rehabilitation while incarcerated, *see, e.g., id.* at 17, and instead "focus[ing] . . . entirely on factors of deterrence, incapacitation and retribution," *id.* In this way, the plaintiff argues, the USPC "begins to perform functions which are within the traditional province of the Judiciary." *Id.* According to the plaintiff, the USPC through its hearing officers decides that an offender should serve a certain amount of time – 35 to 40 years in his case – notwithstanding the sentence actually imposed by the Court. *See id.* at 20. The USPC, the plaintiff contends, therefore may cause an offender to serve time in prison long after his parole eligibility date, *see id.*, which in the plaintiff's case meant "an increase of 54-72 months" past his parole eligibility date, *see id.* at 23.

It appears that the plaintiff misapprehends the nature of parole proceedings. "[T]he jurisdiction and authority . . . to grant and deny parole . . . [to] any felon who is eligible for parole . . . under the District of Columbia Code" rests with the USPC. *Franklin v. Dist. of*

12

*Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998). The USPC, however, has no authority to impose a criminal sentence; this authority rests with the Superior Court of the District of Columbia. *See* D.C. Code § 11-923(b) (2006) (granting jurisdiction to Superior Court over any criminal case under District of Columbia law). Proceedings pertaining to parole are not part of a criminal prosecution. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Rather, such proceedings are separate administrative matters "at which the parolee does not possess the same rights as a criminal defendant at trial." *Maddox v. Elzie,* 238 F.3d 437, 445 (D.C. Cir. 2001); *see Jones v. United States*, 669 A.2d 724, 727 (D.C. 1995) ("Indeed, this court has noted that jeopardy does not attach in parole, probation, or bond revocation hearings, because these proceedings are not designed to punish a defendant for violation of a criminal law." (internal quotation marks and citation omitted)). The USPC, therefore, exercises no judicial function, and its decisions do not violate the separation of powers doctrine. *Geraghty v. U.S. Parole Comm'n*, 719 F.2d 1199, 1211-12 (3d Cir.1983); *Artez v. Mulcrone*, 673 F.2d 1169, 1170 (10th Cir. 1982); *Page v. U.S. Parole Comm'n*, 651 F.2d 1083, 1085 (5th Cir. 1981); *Moore v. U.S. Parole Comm'n*, No. 10-1987, 2011 WL 550003, at *1 (D.D.C. Feb. 10, 2011); *Montgomery v. U.S. Parole Comm'n*, No. 06-2113, 2007 WL 1232190, at *2 (D.D.C. Apr. 26, 2007). Furthermore, there can be no usurpation of judicial authority by the USPC where each parole action, and the additional time the plaintiff has been ordered to serve, has occurred prior to the expiration of the life sentence imposed by the Superior Court.

### 3. "Double Counting" Claim

"Double counting occurs when the [USPC] uses the same criteria to establish both the parole guidelines and to justify a departure from those guidelines." *Delong v. Snyder*, No. 5:07-

HC-2195, 2008 WL 4510583, at *6 (E.D.N.C. Sept. 29, 2008). The plaintiff argues that the USPC relied on the same factors not only to calculate his point score under the 2000 Guidelines but also to depart from those guidelines and deny parole. *See* Compl. at 12, 14-15.

Application of the 2000 Guidelines requires first the calculation of an offender's salient factor score ("SFS"), which "is used to assist the [USPC] in assessing the probability that an offender will live and remain at liberty without violating the law." 28 C.F.R. § 2.80(c). "Based upon the [SFS], the [offender] is placed in one of four risk categories and is assigned a point score ranging from 0 (very good risk) to 3 (poor risk)." Defs.' Mem. at 11-12; *see* 28 C.F.R. § 2.80(f) (Point Assignment Table) (Category I). Next, the USPC assesses the type of risk the offender poses "based on [his] history of violence, the possession of a weapon, and/or the death of the victim." Defs.' Mem. at 12; *see* 28 C.F.R. § 2.80(f) (Point Assignment Table) (Categories II and III). By adding the points assessed for type of risk to the SFS, the USPC determines the offender's base point score, and "converts the base point score into a 'base guideline range[]' stated in months." Defs.' Mem. at 12; *see* 28 C.F.R. § 2.80(h). "The base guideline range is then added to the minimum term imposed as part of the prisoner's sentence." Defs.' Mem. at 12; *see* 28 C.F.R. § 2.80(i).

The plaintiff's SFS places him in the "good risk" category (Category I: Risk of Recidivism (Salient Factor Score)), and he is assessed one point (+1). Because the plaintiff's current offense involved violence and his criminal history reflected felony violence in a prior offense (Category II: Current or Prior Violence (Type of Risk)), he is assessed three points (+3). His current offense resulted in the death of a victim (Category III: Death of Victim or High Level Violence), for which he is assessed three points (+3). The plaintiff's base point score,

representing the total number of points assessed in Categories I –III, is 7. A base point score of 7 translates to a base guideline range of 54-72 months. By adding the number of months the plaintiff must serve prior to his parole eligibility date (288 months) to the base guideline range, the USPC determines the plaintiff's total guideline range: 342-360 months. *See* Defs.' Mem., Ex. C at 2.

At the time of his most recent parole reconsideration hearing, the plaintiff had served 420 months. *See id.*, Ex. C at 2. Exercising its discretion to depart from the guideline range, *see* 28 C.F.R. § 2.80(n), the USPC deemed the plaintiff a more serious risk than indicated by his point score, commenting on the nature of the plaintiff's offenses – murder in the course of committing armed robbery and assault on a witness by shooting with a shotgun at her and the children who were present while the plaintiff was on probation – which caused the USPC to conclude that "there is a reasonable probability that [the plaintiff] will commit additional crimes if released." Compl., Ex. 4 at 1.

Where, as here, the USPC "used the same information to make two distinct determinations," *Delong*, 2008 WL 4510583 at *6, double counting does not occur. The plaintiff's offenses of conviction necessarily were considered to calculate his point score. It was the nature of those crimes which led to the upward departure. *See id.*; *Maddox v. U.S. Parole Comm'n,* 821 F.2d 997, 1001 (5th Cir. 1987).

### D. Equal Protection Clause Claim

Although plaintiff purports to "state[] a claim of an Equal Protection of the law," Compl. at 5, he sets forth no "factual content that allows the court to draw the reasonable inference that

the [defendants are] liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and, therefore, his equal protection claim must be dismissed. *See Hunter v. U.S. Parole Comm'n*, 308 F. App'x 856, 859 (5th Cir. 2009) (rejecting a claim that USPC violated the Equal Protection Clause absent a showing that the USPC "purposefully discriminated against [petitioner] and that he was treated differently from similarly-situated" D.C. Code offenders) (quoting *Longoria v. Dretke*, 507 F.3d 898, 904 (5th Cir. 2007)) (internal quotations omitted); *King v. U.S. Parole Comm'n*, No. 02-5207, 2002 WL 31520756, at *1 (D.C. Cir. Nov. 13, 2002) (per curiam) ("With respect to his equal protection claim, appellant has not demonstrated that he is a member of a suspect class deserving heightened scrutiny, and the [USPC] has a legitimate reason for using degree of violence as a factor in its parole decisions.").

## III. CONCLUSION

The plaintiff's complaint fails to state a constitutional claim upon which relief can be granted and, accordingly, the defendants' motion to dismiss will be granted. An Order accompanies this Memorandum Opinion.

/s/
REGGIE B. WALTON
United States District Judge

DATE: November 5, 2012